**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jennifer K.,                                                                 Case No. 22-cv-700 (NEB/DTS)

    Claimant,

v.                                                                           **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
*Acting Commissioner of Social Security,*

    Defendant.

---

Claimant Jennifer K. appeals the Commissioner of Social Security's denial of disability benefits. She contends the ALJ failed to account in the RFC for his omission of a limitation to a workplace with predictable changes, as endorsed by both state agency psychologists, despite finding their opinions persuasive. Claimant argues this omission rendered the RFC inaccurate, and therefore the vocational expert's testimony on a hypothetical based upon the RFC cannot constitute substantial evidence to support the ALJ's ultimate disability determination. Claimant also argues the ALJ erred by using an "arbitrary definition" of "superficial interaction" with respect to social functioning in the workplace. Finally, Claimant argues the ALJ failed to properly evaluate the opinion of Claimant's treating therapist, Lynn Penney, MA, LPCC. For the reasons stated below, the Court recommends the Commissioner's decision be reversed and remanded for further proceedings.

**I.   ALJ DECISION**

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The

Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued his decision on May 14, 2021. In steps one through three, he found Claimant had not engaged in substantial gainful activity since the amended onset date of January 31, 2020, and had the following severe impairments: lumbar degenerative disc disease; obesity; chronic pain syndrome; dyspnea on exertion and supraventricular tachycardia with presumptive coronary artery disease; depression; bipolar; attention-deficit hyperactivity disorder; anxiety; and polysubstance dependence. R. 61.[1] The ALJ also found Claimant had the following non-severe impairments: restless legs syndrome, gastroesophageal reflux disease, hypothyroidism, constipation, eczema, migraine, hemorrhoids, hepatitis C, fatty liver, as well as now-resolved muscle strain of the left thigh and trochanteric bursitis of the left hip.[2] R. 61-62. The ALJ determined these impairments, whether considered singly or in combination, do not meet or medically equal any listed impairment contained in 20 C.F.R., Part 404, Subpart P, Appendix 1, including 1.15, 1.16, 4.04, 12.04, 12.06, 12.11 and SSR 19-2p.

---

[1] "R." refers to the Administrative Record, Docket. No. 18.
[2] The ALJ noted Claimant's alleged seizure disorder, but because there is no evidence in the record that Claimant has been diagnosed with or treated for a seizure disorder, the ALJ determined it was not a medically determinable impairment. R. 62.

The ALJ determined that Claimant had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 416.967(b)," subject to the following conditions:

- Claimant may frequently climb ladders, ropes, or scaffolds
- Claimant may frequently stoop, crouch, and crawl
- Claimant is limited to simple routine repetitive tasks at a nonproduction pace
- Claimant may have occasional superficial contact with others, where superficial is defined as rated no lower than an 8 on the Selected Characteristics of Occupations' people rating.

R. 68.

Given Claimant's RFC, the ALJ found that Claimant is capable of performing other work in the national economy, including working as a housekeeper, photocopying machine operator, or mail clerk, and is therefore not disabled. R. 70.

## II.   STANDARD OF REVIEW

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* § 405(g) (sentence four).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under Social Security regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous

3

work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). It is Claimant's burden to prove the RFC. *Schake v. Berryhill*, 2018 WL 4469250, at *10 (D. Minn. Sept. 18, 2018) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). At step five the "burden of production shifts to the Commissioner to produce evidence of jobs available in the national economy that can be performed by a person with the claimant's RFC and vocational skills," but the "ultimate burden of persuasion to prove disability . . . remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (internal citation omitted).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quotation and alteration omitted).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Decisions outside "the available zone of choice" are decisions not among the possible positions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The Court "must consider evidence that

supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted).

Reversal of an ALJ's decision is not required if an error was harmless, meaning "[t]here is no indication that the ALJ would have decided differently" if the error had not occurred. *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (internal quotations omitted). Claimant generally bears the burden of showing that any alleged error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.   ANALYSIS

Claimant challenges the RFC on three grounds. First, Claimant asserts the RFC inaccurately represents her capacity because the ALJ found the state agency psychologists' opinions persuasive, "yet failed to articulate how the opined ability to manage predictable changes was accounted for or why it was omitted from the RFC." Dkt. No. 23 at 9. Claimant also argues the ALJ erred by using an "arbitrary definition" of "superficial interaction" with respect to social functioning in the workplace. *Id.* At 12. Finally, Claimant argues the ALJ failed to properly evaluate the opinion of Claimant's treating therapist, Lynn Penney, MA, LPCC. *Id.* At 15.

### A.  Predictable Changes Limitation

Claimant asserts the ALJ erred by finding the state agency psychologists' opinions persuasive, but nonetheless omitting their proposed limitation to only predictable workplace changes (PWC) from the RFC, without explanation. Dkt. No. 23

5

at 11. Claimant argues this unexplained omission from the RFC constitutes reversible error for failing to construct a logical bridge between the opinions found persuasive and the RFC. *Id.* At 8-10. Claimant further argues the omission of a PWC limitation in the hypothetical posed to the vocational expert (VE) rendered the VE's testimony inaccurate and unreliable. *Id.* at 11.

The Commissioner contends that because "repetitive" represents a more restrictive limitation than a PWC limitation, there could be no harmful error resulting from the ALJ relying on the VE's testimony. Dkt. No. 27 at 8 (citing *Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (finding harmless error when a vocational expert testified that there was work available to an individual with even greater limitations than the claimant had)).

### 1. Is "Repetitive" Synonymous with PWC

The threshold issue to resolve is whether the agency psychologists' proposed limitation to only PWC was encompassed by the ALJ's inclusion of "repetitive" in the "simple routine repetitive tasks at a nonproduction pace" limitation in the RFC. The ALJ stated, with respect to the state agency psychological consultants:

> The psychological consultants concluded the claimant has the capacity to remember and perform simple routine tasks that do not have strict time or production demands; for superficial interactions with supervisor[s], coworkers and the public; and for *predictable workplace changes*. These opinions are persuasive, as they consistent [sic] with the medical evidence of record, and their opined limitations are fully supported by the overall record including objective mental status exam findings, observations by providers, the claimant's subjective complaints to treating providers, her subjective scores, and her overall functioning.

R. 74 (emphasis added). In the RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR

6

>416.967(b) except with the following additional limitations: The claimant may frequently climb ropes, ladders, and scaffolds, stoop, crouch, and crawl. The claimant is limited to simple routine *repetitive* tasks at a nonproduction pace and may have occasional superficial contact with others, where superficial is defined as rated no lower than an 8 on the Selected Characteristics of Occupations' people rating.

R. 68 (emphasis added).

The Commissioner argues the functional capacity limitation of "repetitive" in the RFC is "a limitation more restrictive" than a PWC limitation. Dkt. No 27 at 8. To support this argument, the Commissioner cites the definition of "repetitive," which the Brittanica Dictionary defines as "'happening again and again: repeated many times.'" *Id.* The Commissioner, however, cites no caselaw or other legal authority establishing that "repetitive" is synonymous with PWC. *Id.*

The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. After the ALJ has found a mental impairment and analyzed whether medical findings relevant to the ability to work are present or absent, the procedure requires the ALJ to rate the degree of functional loss resulting from the mental impairment in four broad areas of function deemed essential to work: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

The weight of authority across the majority of jurisdictions considers "simple, routine, repetitive" task limitations as related to the "concentrate, persist, and maintain pace" area of function. *See, e.g.*, *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding a limitation to "simple, repetitive, routine tasks" adequately captured a claimant's difficulties in concentration, persistence, or pace when supported by agency psychologist's functional report); *Shinaberry v. Saul*, 952 F.3d 113, 119 (4th Cir. 2020)

7

(holding a limitation to "simple, routine, repetitive tasks" sufficiently accounted for a moderate limitation in concentration, persistence, and pace and a borderline intellectual disability); *Riddle v. Sec. of Health and Human Services*, 904 F.2d 708 (6th Cir. 1990) (stating "claimant's mental impairments caused him to have a lowered tolerance for stress and concentration difficulties which would limit him to performing simple repetitive tasks."); *Ray v. Colvin*, 657 Fed. Appx. 733, 735 (10th Cir. 2016) (unpublished) (stating claimant's mood disorder limits her to simple, routine, repetitive tasks with the ability to maintain attention and concentration for two hours at a time); *Duval v. Commr. of Soc. Sec.*, 628 Fed. Appx. 703, 713 (11th Cir. 2015) (unpublished) (holding "the ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform."); *Athena W. v. Commr. of Soc. Sec.*, 2023 WL 2262790, at *3 (W.D.N.Y. Feb. 27, 2023) (holding limitation to "no more than simple, routine, repetitive, low stress work, with no production rates or pace" accounted for moderate limitations in attention and concentration); *Polardino v. Colvin*, 2013 WL 4498981, *3 (W.D.Pa. Aug.19, 2013) ("The Third Circuit Court of Appeals has determined that a limitation to simple, routine tasks sufficiently accounts for a claimant's moderate limitations in concentration, persistence and pace.").

In contrast, a limitation to "few if any work place changes…deals largely with workplace adaptation, rather than concentration, pace, or persistence." *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015); *Fernandez v. Berryhill*, 2019 WL 1472958, at *4 (D.S.C. Mar. 13, 2019) (stating "limiting Plaintiff's RFC to no more than occasional contact with the general public along with few, if any, work place changes deals largely

8

with workplace adaptation, rather than concentration, pace, or persistence."), *report and recommendation adopted,* 2019 WL 1470198 (D.S.C. Apr. 3, 2019); *see also Emma D. A. W. v. Kijakazi*, 2023 WL 402117, at *6 (C.D. Cal. Jan. 25, 2023) (stating "the district court case law is split 'but tends to favor the view' that a restriction to simple, routine tasks with limited public contact does not account for the limitations Dr. Stewart identified in Plaintiff's ability to deal with workplace stress and to adjust to changes in the workplace") (internal citation omitted).

In addition to the greater weight of authority, the record is devoid of discussion by the ALJ indicating that "repetitive" was included in the RFC to encompass the PWC limitation the agency psychologists proposed. Neither the agency psychologists nor any other mental health professional used these terms synonymously in the record. Further, similar to the ALJ's evaluation of Claimant's mental impairments in four distinct areas of functioning, the psychologists' standard Psychiatric Review Technique Form requires rating a claimant's limitations, as grouped into separate categories. One category asks the psychologist to "Rate the individual's sustained concentration and persistence limitations," followed by a subset of corresponding questions. A separate category asks the psychologist to "Rate the individual's adaptation limitations," including rating claimant's "ability to respond appropriately to changes in the work setting" amongst the subset of corresponding questions. Facially, this indicates the agency psychologists considered the ability to respond to changes in the work setting to correspond to "adaptation limitations," and not to maintaining concentration, persistence, or pace.

As examined above, "simple, routine, and repetitive" task limitations are frequently understood to correspond to concentration, persistence, and pace. The

agency psychologists evaluate concentration, persistence, and pace limitations separately, with a distinct subset of questions. Considering limitations to concentration, persistence, and pace separately from workplace adaptation limitations is mirrored in the structure of the psychologists' proposed limitations, with "simple routine tasks that do not have strict time or production demands" proposed in a separate sentence from "predictable workplace changes." R. 205. The psychologists' recommended:

> Clmt retains sufficient mental capacity to remember and perform simple routine tasks that do not have strict time or production demands. Clmt is capable of superficial interactions with supervisor, coworkers, and the public. Clmt would be capable in a setting with predictable workplace changes.

R. 205.

The ALJ followed the same sequence of limitations when he found the agency psychologists' opinions fully persuasive, stating, the "psychological consultants concluded the claimant has the capacity to remember and perform simple routine tasks that do not have strict time or production demands; for superficial interactions with supervisors, coworkers and the public; and for predictable workplace changes." R. 74. In contrast, in formulating the RFC, the ALJ stated the "claimant is limited to simple routine repetitive tasks at a nonproduction pace and may have occasional superficial contact with others. . . ." R. 68. Thus, the ALJ used similar language in the RFC with respect to the agency psychologists' first two proposed limitations but omitted any reference to the third limitation to "predictable workplace changes."

Further, basic grammar indicates that PWC was omitted from the RFC rather than replaced by the added word "repetitive." "Simple" "routine" and "repetitive" are all adjectives that modify the noun "tasks" in the RFC, which is then further modified by the

10

prepositional phrase "at a nonproduction pace." The agency psychologists also used the adjectives "simple" and "routine" to modify the noun "tasks," which was likewise further modified with the prepositional phrase "that do not have strict time or production demands."

In short, a grammatical analysis—like the weight of authority—supports interpreting simple routine repetitive task limitations and PWC limitations as relating to distinct types of deficits in functioning: concentration, persistence, and pace versus workplace adaptation. In both the RFC and the psychologists' proposed limitation to simple routine tasks, the operative noun, "tasks," is modified to limit the complexity ("simple"), nature ("routine"), and time constraints ("nonproduction pace") of the Claimant's work. With respect to workplace adaptation, the psychologists' proposed limitation stated claimant would be capable "in a setting with predictable workplace changes." There, the operative noun is "setting," which is modified by the prepositional phrase "with predictable workplace changes." The Commissioner's argument asks the Court to accept that the ALJ's insertion of the adjective "repetitive" into the psychologists' proposed simple routine tasks limitation effectively encompasses a PWC limitation that, when proposed by the agency psychologists, corresponded to an entirely different noun: "setting." This argument is grammatically incorrect, and absent evidence within the record showing such intent by the ALJ, or any other legal authority supporting this interpretation, the Court is not persuaded by the Commissioner's argument. Accordingly, the Court concludes the PWC limitation was omitted.

### 2. Harmless Error Analysis

Having determined the PWC limitation was omitted, the Court must determine if this omission constituted harmless error. Claimant argues the omission constitutes harmful error, contending the RFC does not accurately reflect her functional capacity because the PWC limitation was omitted. Claimant further argues the VE's testimony cannot constitute substantial evidence to support the ALJ's disability determination, because the hypothetical did not include a PWC limitation. Dkt. No. 23 at 11.

"A claimant's RFC is 'the most [she] can still do despite h[er] limitations.'" *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "[Social Security Ruling 96-8p] requires the ALJ to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved . . . [i]f the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted." *Masden v. Saul*, No. 4:20-CV-00267-MDH, 2021 WL 3172934, at *2 (W.D. Mo. July 27, 2021) (citing SSR 96-8p, 1996 WL 374184, at *7 (S.S.A., July 2, 1996)).

If the ALJ fails to explain material inconsistencies or ambiguities, this error is not harmless when the Court "'cannot determine whether the ALJ would have reached the same decision denying benefits, even if [s]he had followed the proper procedure.'" *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (quoting *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003)). However, an error may be nonetheless held

harmless if a claimant fails to meet his/her burden to "provide some indication that the ALJ would have decided differently if the error had not occurred." *Id.* at 1069 (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Claimant may also allege harmful error by specifying how the RFC does not accurately reflect what she can do despite her limitations. *C.f. Tyler M. J. v. Berryhill*, 2019 WL 720120 at * 10 (D. Minn. Feb. 20, 2019).

The "ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Vicky R. v. Saul*, 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021) (quoting *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)). The ALJ found the PWC limitation proposed by the agency psychologists persuasive and "fully supported" by the record, but omitted that limitation from the RFC and the hypothetical posed to the VE. R. 118-19. The PWC limitation being omitted from the RFC and hypothetical is sufficient to meet Claimant's burden in two ways. First, Claimant has specified how the RFC is inaccurate because of the omission. Second, the ALJ relied upon the VE's testimony to determine Claimant is not disabled, which provides some indication the ALJ would have decided differently had the omission not occurred. R. 20.

Because Claimant has met her burden, the Court next considers if this error was inconsequential to the ultimate disability decision, and thus harmless. *Johnson v. Commr. of Soc. Sec.*, 2012 WL 4328389, at *7 (D. Minn. Sept. 20, 2012) (citing *Dewey v. Astrue,* 509 F.3d 447, 449–50 (8th Cir.2007)). While a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete

13

analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

Courts have considered factually analogous cases and determined the omitted limitation constituted reversible error. In *Cook v. Kijakazi*, the ALJ explicitly acknowledged an opinion offered by a doctor as both consistent with the record and persuasive. *Cook v. Kijakazi*, 2022 WL 4117028, at *3 (W.D. Mo. Sept. 9, 2022). This opinion included the doctor's evaluation that the claimant was "capable of adapting to changes which are predictable and introduced gradually." *Id.* The "ALJ failed to include this limitation in the RFC or provide an explanation about why she disregarded it even though she found Dr. Watson's opinion persuasive," which the court determined was error. *Id.* (citing *Masden v. Saul,* 2021 WL 3172934, at *2 (W.D. Mo. July 27, 2021) (finding it was error for the ALJ to find a doctor's opinion persuasive but not explain the exclusion of the doctor's opinion that the claimant was limited to "gradual and predictable" workplace changes). The court stated "[t]his error was not harmless because this limitation had a potentially significant impact on the case's outcome." *Id.* (citing SSR 85–15, 1985 WL 56857, at *4 (S.S.A. Jan. 1, 1985). Accordingly, the court remanded the case. *Id.*

Further, the Eighth Circuit has held it is reversible error for an ALJ to omit a doctor's opinion and proposed limitations, without discussion or accounting for the omission, because the court could not "say [the ALJ] provided good reasons for his treatment of that opinion as he was required to do under the applicable regulations." *Walker v. Commr., Soc. Sec. Administration*, 911 F.3d 550, 554 (8th Cir. 2018). While the ALJ discussed and found the agency psychologists' opinions persuasive in this

case, the ALJ did not provide good—or any—reasons for the omission. Under these circumstances, this constitutes reversible error. On remand, the ALJ is directed to revise the RFC to include a PWC limitation or explain its omission. *See Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020).

Additionally, Claimant argues that the ALJ posed an incomplete hypothetical to the VE because it did not include the PWC limitation. The VE's testimony in response to an incomplete hypothetical cannot constitute substantial evidence to support the ALJ's disability determination. *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992) (stating testimony elicited by hypothetical questions that "do not relate with precision all of a claimant's impairments cannot constitute substantial evidence" to support the ALJ's decision).

The ALJ relied upon the VE's testimony to determine whether jobs were available in substantial numbers that could be performed by a person with Claimant's RFC. R. 20 (The ALJ stated "based upon the testimony of the vocational expert, I conclude . . . the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."). Accordingly, the Court cannot conclude the ALJ's ultimate disability determination is supported by substantial evidence. On remand, if the ALJ revises the RFC to include a PWC omission, the VE should be recalled for testimony on a new hypothetical addressing all of Claimant's limitations.

### B.  Definition of "Superficial Interaction"

Claimant also contends the ALJ erred by defining superficial as "occasional superficial contact with others where superficial is defined as rated no lower than 8 on the Selected Characteristics of Occupations' People Rating." Dkt. No. 23 at 12 (citing

R. 68). But there is no conflict between that definition and the RFC. Nor is there anything arbitrary about the definition the ALJ used. The RFC stated the Claimant was limited to occasional superficial contact with others, and defined superficial as rated no lower than 8 on the DOT's Selected Characteristics of Occupations' people rating. The DOT people rating scale ranges from 0 – 8, with 0 requiring the most complex interactions with other people (i.e. mentoring), and 8 requiring the least complex (i.e. helping and taking instructions). DICTIONARY OF OCCUPATIONAL TITLES, *App. B - Explanation of Data, People, and Things*, 1991 WL 688701. Thus, the ALJ limited Claimant to the most superficial degree of contact under the DOT. This high degree of restriction does not conflict with the Claimant's proposed definition of "superficial"; nor is it arbitrary. Further, any alleged error distinguishing superficial and occasional is irrelevant. The ALJ's failure to differentiate these terms could not have had any impact on the outcome of this case, because the ALJ included both "superficial" and "occasional" in the RFC and hypothetical posed to the VE.

### C. Treating Physician's Opinion

Finally, Claimant argues the ALJ did not properly evaluate the opinion rendered by treating therapist Lynn Penney, MA, LPCC, alleging the ALJ's analysis was too cursory and nonspecific to adequately evaluate the opinion's supportability and consistency. Dkt. No. 23 at 15.

The ALJ does not defer or give any specific evidentiary weight, including controlling weight, to medical opinions or prior administrative medical findings, including those from a claimant's treating physicians or providers. 20 C.F.R. § 404.1520c(a). Rather, all medical opinions and prior administrative medical findings start on equal

16

footing, and the ALJ evaluates their persuasiveness by considering the factors outlined in the regulations. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). An opinion's "supportability" is the extent to which the source offering the opinion provides objective medical evidence and explanations supporting the opinion. 20 C.F.R. § 404.1520c(c)(1). Its "consistency" is the extent to which the opinion is consistent with the other record evidence from both medical and non-medical sources. 20 C.F.R. § 404.1520c(c)(2).

In evaluating Ms. Penney's opinion, the ALJ stated:

> Notably, Ms. Penney indicated that the claimant had treated with her for only 3 visits, on July 20, 2020, August 14, 2020, and September 30, 2020. I find this opinion not persuasive, as it is conclusory, and is a generic check block opinion with no explanation for the blocks checked. It is, therefore, not internally supported. Furthermore, this opinion is not consistent with Ms. Penney's treatment notes, nor with notes from any mental health provider. It is, therefore, not supportable by the evidence as a whole. Thus, I find Ms. Penney's opinion not persuasive.

R. 75.

As can be seen above, the ALJ found Ms. Penney's opinion was inconsistent with her own treatment notes (supportability), as well as notes from other mental health providers (consistency). This is alone sufficient to evaluate supportability and consistency. *See Lilja v. Berryhill*, 2017 WL 1183977, at *24 (D. Minn. Mar. 29, 2017) (stating the ALJ properly discounted a physician's opinions because they were inconsistent with her treatment notes). Further, the ALJ found Ms. Penney's opinion was not persuasive because it was conclusory and in a generic check block format, with no explanations for the selections. It is appropriate for the ALJ to disregard a physician's opinion as conclusory or vague. *See Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir. 2001) (treating physician's vague and conclusory opinion is not entitled to

17

deference). Disregarding an "opinion for vagueness necessarily evaluates supportability, as it finds the opinion to be unsupported by adequate explanation." See *Roxane D. v. Kijakazi*, 2023 WL 2838121, at *3 (D. Minn. Feb. 13, 2023), report and recommendation adopted sub nom. *Dawn v. Kijakazi*, 2023 WL 2496594 (D. Minn. Mar. 14, 2023). Accordingly, the ALJ properly evaluated the consistency and supportability of Ms. Penney's opinion.

## IV. RECOMMENDATION

Based on the foregoing and all the files, records and submissions, the Court **RECOMMENDS THAT**:

1. Claimant's Motion for Summary Judgment [Dkt. No. 22] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, that Claimant's motion to the Court to enter judgment in favor of Claimant be **DENIED**, and Claimant's request in the alternative for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) be **GRANTED**.

2. The Commissioner's Motion for Summary Judgment [Dkt. No. 22] be **DENIED.**

3. This matter be **REMANDED** to the ALJ for further proceedings consistent with this opinion. The ALJ should redetermine Claimant's RFC to either include all limitations the ALJ found persuasive and supported, including a limitation for predictable workplace changes, or explain any omissions. If the RFC is revised, the VE should be recalled for testimony on a new hypothetical addressing all of Claimant's limitations.

Dated: May 26, 2023                              s/David T. Schultz
                                                 DAVID T. SCHULTZ
                                                 U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).